IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 07-cv-02021-REB-MEH

LOVINA OBI,

    Plaintiff,

v.

CENTURA HEALTH CORPORATION,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is defendant **Centura's Motion for Summary Judgment** [#18], filed August 13, 2008. I grant the motion.

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome

of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Id.*** at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Plaintiff was employed by defendant as a Certified Nursing Assistant at Senior Life Center.  Her supervisor in that position was Director of Nursing, Eleanor Crichlow.  Plaintiff's employment was terminated in August, 2006, when the Senior Life Center closed.  Plaintiff subsequently brought this lawsuit claiming that defendant discriminated against her on the basis of her race, black, and national origin, African.

Plaintiff filed her Charge of Discrimination with the EEOC on October 30, 2006.  She candidly acknowledges that she cannot recover damages for any act occurring more than 300 days before the date of her charge, or prior to January 3, 2006.  ***See*** 42 U.S.C. § 2000e-5(e)(1); ***Holmes v. Utah Department of Workforce Services***, 483 F.3d 1057, 1061-62 (10th Cir. 2007). Therefore, plaintiff asserts that her claims in this

2

lawsuit "relate to adverse treatment she received from Ms. Crichlow from January, 2006, on" including specifically "the actual comments that strained relations with patients, coworkers, [and] patient's families, the blocking of transfers to other facilities in the Centura System, and the failure to pay severance pay." (Plf. Resp. Br. at 5.) To the extent plaintiff recounts events occurring outside this time frame, she relies on such events only as background.

It appears that part of plaintiff's discrimination claim is an allegation that defendant created a hostile work environment. **See Plakio v. Congregational Home, Inc.**, 902 F.Supp. 1383, 1392 (D. Kan. 1995) (noting that "harassment is a subset of [] discrimination"). To establish this claim, plaintiff must prove, *inter alia*, "that she was targeted for harassment because of her . . . race[] or national origin." **Sandoval v. City of Boulder, Colorado**, 388 F.3d 1312, 1327 (10th Cir. 2004). Plaintiff has not produced sufficient evidence to create a genuine issue of material fact as to this aspect of her hostile work environment claim.[1]

There is absolutely no evidence that plaintiff was subjected to any type of insult, ridicule, or slur based on her race or national origin that might suggest she was harassed based on a protected characteristic. **See Trujillo v. University of Colorado Health Sciences Center**, 157 F.3d 1211, 1214 (10th Cir. 1998). Instead, plaintiff

---

[1] Plaintiff's sole evidence in response to the motion for summary judgment consists of her own affidavit. The affidavit she originally submitted was unsigned. Although plaintiff subsequently filed a signed copy of the same document ([#27], filed September 24, 2008), which purports to be signed before a notary, I note that the notary's certification does not include his or her stamp (the notary's signature itself is illegible). **See** §12-55-112(2), C.R.S. (requiring Colorado notary to affix his or her official seal to document notarized ). Moreover, the date of the commission appears to be recorded as "4-8-240." Although I find the certification highly suspicious, because the affidavit fails to raise a genuine issue of fact in any event, I will consider it as presented.

alleges that Crichlow branded her a "trouble maker," asked others to report her for even minor infractions, gave her tasks to complete in unrealistic time frames and then had her written up for failing to complete them, excluded her from office birthday parties, discarded notes of appreciation from patients' families relating to plaintiff rather than posting them on the bulletin board, and overlooked plaintiff for an employee of the month award, even though "it was [plaintiff's] turn to receive the award." In her deposition, plaintiff also complained that Crichlow made critical comments about plaintiff's work performance,[2] regularly checked on plaintiff's patient rooms to see if she had done her job correctly, yelled and talked down to her, and was generally impolite and rude.

Although these incidents may demonstrate that Crichlow was hostile to plaintiff in the vernacular sense, they do not make out a viable hostile work environment claim under Title VII. Nothing in plaintiff's affidavit or deposition testimony suggests that Crichlow treated plaintiff harshly because she was black or African. At best, plaintiff has described nothing more than "a work environment that exhibits the monitoring and job stress typical of life in the real world." *Id*. However, "federal law does not guarantee a utopian workplace, or even a pleasant one . . . [P]ersonality conflicts between employees are not the business of the federal courts." *Id.* (citation and internal quotation marks omitted).

Likewise, to the extent plaintiff seeks to recover under a theory of disparate treatment, her evidence fails to establish that Crichlow's alleged mistreatment of her

---

[2] Specifically, Crichlow was particularly intolerant any time she found plaintiff standing around talking with co-workers or patient family members and told her in such situations to "get back to work."

was in any way related to her national origin.[3]  **See Salguero v. City of Clovis**, 366 F.3d 1168, 1175 (10th Cir. 2004).  Only twice does plaintiff even suggest that Crichlow's actions toward her were motivated by her national origin.  First, plaintiff alleges that Crichlow terminated her insurance benefits after she was placed on light duty restriction following surgery despite the fact that Crichlow allegedly "always respects doctor's excuse notes for light duty for non-African employees." (Plf. Resp. App., Exh. 1 ¶ 10 at 3.)[4]  Second, plaintiff claims Crichlow "did not give [severance pay] to me or any of the African employees" when Senior Life Center was closed in 2006.  (**Id.**, Exh. 1 ¶ 10 at 4.)

Neither of these allegations is sufficient to create a genuine issue of material fact for trial.  First and foremost, they are substantiated by nothing more than plaintiff's own, subjective beliefs, which are not competent summary judgment evidence.  **See Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999); **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).  Similarly, it is simply rank speculation to infer that Crichlow had any role whatsoever in the processing of employee insurance benefits or determining who was entitled to severance pay.[5]  Finally, and even if I were inclined to indulge such an inference,

---

[3] Nowhere in her affidavit does plaintiff suggest that Crichlow targeted her for mistreatment because of her race.

[4] In addition to the other infirmities noted herein, this event is not even clearly within the time frame covered by plaintiff's EEOC complaint.

[5] Instead, defendant has presented evidence showing that Crichlow was not involved in any way with insurance benefit determinations or severance payments.  (**See** Def. Motion App., Exh. 3 ¶ 3 at 2.)  Moreover, defendant had a written policy in place that precluded plaintiff from receiving severance because she was offered comparable employment with an affiliated company "located within 30 miles of the office where the associate is employed." (**Id.**, Exh. 1-N at 39)  Plaintiff was offered a job at another Centura facility less than 15 miles from Senior Life Center (**id.**, Exh. 1-B & Exh. 3 ¶ 7 at 3), and no competent evidence refutes defendant's assertion that no other similarly situated employee was paid

5

plaintiff's failure to cite to even one specific, concrete instance in which Crichlow allegedly continued insurance benefits for or offered severance to a non-African employee in similar circumstances dooms her disparate treatment claim to failure. *See Sorensen v. City of Aurora*, 984 F.2d 349, 352-53 (10th Cir. 1993); *Henry v. Gehl Corp.*, 867 F.Supp. 960, 963-64 (D. Kan. 1994). There is simply nothing in the record to suggest that these decisions were infected with discriminatory animus.

On the whole, therefore, plaintiff's evidence shows nothing more than that Crichlow did not think very highly of plaintiff as an employee and scrutinized her closely and harshly. Such workplace conflicts, unmoored from any evidence suggesting race or national origin bias, are not sufficient to make out an actionable Title VII claim.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Centura's Motion for Summary Judgment** [#18], filed August 13, 2008, is **GRANTED**;

2. That the parties' **Expedited Joint Motion To Vacate Pretrial Conference, Final Trial Prep Conference and Trial Date** [#29], filed October 1, 2008, is **DENIED AS MOOT**;

3. That plaintiff's claims against defendant in this lawsuit are **DISMISSED WITH PREJUDICE**;

4. That judgment **SHALL ENTER** on behalf of defendant, Centura Health Corporation, and against plaintiff, Lovina Obi, on all claims and causes of action;

5. That the Trial Preparation Conference, currently scheduled for **Wednesday,**

---

severance. (*Id.*, Exh. 3 ¶ 8 at 3.).

**November 19, 2008**, at **1:15 p.m.**, as well as the trial, currently scheduled to commence on **Monday, December 15, 2008**, at **8:30 a.m.**, are **VACATED**; and

6. That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 30, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**